UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| GREGORY COBBINS, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 1:06-0073 |
| | ) Judge Echols |
| TENNESSEE DEPARTMENT OF TRANSPORTATION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

This is an action for race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, in which the parties have filed cross-motions for summary judgment. Defendant Tennessee Department of Transportation ("TDOT") filed its Motion for Summary Judgment (Docket Entry No. 17) on July 17, 2007. That same day, Plaintiff Gregory Cobbins' ("Cobbins") filed a Motion for Summary Judgment (Docket Entry No. 22). Both motions have been fully briefed by the parties.

### I. FACTUAL BACKGROUND

Plaintiff, an African American male, has been employed by TDOT in Lawrence County, Tennessee since February 3, 1994. He was originally hired by TDOT as a Highway Maintenance Worker 1.

On March 11, 2004, Plaintiff submitted an application to the Tennessee Department of Human Resources ("TDHR") seeking promotion to one of the following TDOT career service positions: (1) Highway Maintenance Superintendent 2; (2) Highway Maintenance Superintendent 1; (3) Highway Maintenance County Supervisor; (4) Highway Maintenance Assistance County Supervisor; and (5) Highway Maintenance Worker 2. Filing an application with TDHR was in compliance with governing rules relating to applications for career service positions.

TDHR is responsible for reviewing career service applications to verify that the applicants meet the minimum qualifications of the posted job. Applicants who meet the minimum

qualifications for particular classifications then receive a civil service score based upon the applicable TDHR examination process.

The examination process utilized by TDHR for the career service positions that Plaintiff applied for is a Training and Experience examination. Under this examination process, the qualified applicant receives a score based on his or her prior education, training, and work experience in relation to a set of job competencies typically required or associated with the job being evaluated or rated.

When an agency such as TDOT needs to fill a career service position, the agency requests a "Certificate of Eligibles" ("certificate"). This is a list of the eligible applicants ("eligibles") for the position in rank order by civil service score. The lowest score that an applicant may have and still be deemed eligible is 70.

There are two types of certificates available to agencies – "employment" (commonly referred to as "appointment") and "promotional." An agency may request either or both types of certificates when filling position vacancies. "Employment" certificates include the names of all available eligibles listed in rank order of examination scores, and appointments from these certificates must be made from the five (5) highest ranking eligibles. "Promotional" certificates include only state employee applicants with career status listed in rank order of examination scores. Appointments from those certificates must be made from the three (3) highest ranking eligibles.

After an agency receives the requested certificate, it generates letters inviting applicants for interviews. The interview process is necessarily limited to the top five eligibles on an employment certificate and the top three eligibles on a promotional certificate.

Based upon his application, Plaintiff was placed on the Certificate of Eligibles for the Highway Maintenance County Superintendent 1 position with a minimum qualifying score of 70. He was placed on the Certificate of Eligibles for the Highway Maintenance County Supervisor and Highway Assistant County Supervisor positions with scores of 74, and the Highway Maintenance Worker 2 position with a score of 93. Plaintiff did not meet the minimum qualifications for the

Highway Maintenance Superintendent 2 position and was not listed on the Certificate of Eligibles for that position.

On May 19, 2004, the Highway Maintenance County Supervisor position for Lawrence County came open and, on October 5, 2004, a certificate was pulled for that position. Plaintiff's score of 74 was not among the top five candidates and accordingly he was not interviewed for that position. Bobby Bates ("Bates"), who was then the Assistant County Supervisor, was selected for the Lawrence County position, but he declined the appointment.

On October 28, 2004, a second certificate was pulled for the Highway Maintenance County Supervisor position. Again, Plaintiff was not one of the five (5) highest ranking eligibles for the position, and, as a result, he was neither interviewed nor selected because of his position on the certificate. Grady Boshers ("Boshers"), with a score of 95, was selected, but he also declined the appointment.

On April 14, 2005, a third certificate was pulled for the Highway Maintenance County Supervisor position in Lawrence County. Plaintiff (with a score of 76[1]) was on the list of eligibles with three other individuals: Bates (with a score of 94), James Johnson ("Johnson") (with a score of 84), and Bradford Staggs ("Staggs")(with a score of 81).[2]

On April 18, 2005, TDOT sent letters to the eligibles notifying them they were selected for interviews. Bates and Johnson advised that they were not interested in the position. Plaintiff and Staggs were interviewed on April 25, 2005 by Gerald F. Nicely, the Commissioner of TDOT, Winston Gaffron "Gaffron," a Regional Director of TDOT, and Kenneth Haile, whose position is not apparent from the filings in the record.

---

[1] The parties agree that the Plaintiff had a score of 76. Elsewhere, the parties appear to agree that Plaintiff had a score of 74 in relation to this position. Regardless, there is no dispute that Plaintiff surpassed the minimum qualifying score of 70, or that he was within the top five candidates for this position based upon his score.

[2] The record does not reflect why only four (instead of five) candidates were on the list of eligibles.

3

Staggs, a Caucasian, was recommended for promotion to the Highway Maintenance County Supervisor position. In a letter to the Director of Affirmative Action for TDOT, Gaffron set forth the responsibilities of the position, the backgrounds of the interviewees and the basis for the recommendation. Gaffron observed:

> Mr. Staggs has some higher education having studied Technology and Agriculture Science from 1991 to 1995. He was promoted to Highway Maintenance Worker 2 in October 2001. He has some supervisory experience in having substituted for the regular supervisor during the absence of the latter. Furthermore, he has been placed in charge of supervising a work crew on a regular basis. He has a good work record and, throughout his work history, has been an exemplary employee.
>
> Mr. Cobbins states on his application that he attended the Pulaski State Area Vocational School for one month, May 11, 1992 to June 12, 1992, but does not specify his field of study. He was promoted to Highway Maintenance Worker 2 July 16, 2004. His work history is fraught with disciplinary action and he has no supervisory experience.
>
> Based on the summary of his education, experience and work record, I recommend Mr. Staggs for this position. I believe his knowledge and experience provide strength for this recommendation.

(Docket Entry No. 24-3). Following the recommendation, TDOT's Director of Affirmative Action approved the recommendation. Staggs became Highway Maintenance County Supervisor in Lawrence County.

In Staggs' employment application, he reported that he had some higher education. In the box captioned "Postsecondary Education" which asks the applicant to "list schools attended *after*[3] high school," Staggs wrote that he studied "Technology" and "Ag Science" at "Lawrenceburg Vocational" from 1991 to 1995.[4] However, that same application indicates that Staggs graduated high school in June 1995. (Cobbins Depo. Ex. 6). The application also reports that Staggs had worked as a Highway Maintenance Worker 2, which is the position just below the Supervisor position, since October 2001, and that he had filled in for his supervisor about 10% of the time. Staggs was promoted to Highway Maintenance Worker 2 in October 2001.

---

[3]"After" was underlined and italicized on the application form.

[4]In an earlier application, Staggs did not identify any post-secondary education.

4

Plaintiff's employment application reveals that he graduated from high school and attended a vocational school for one month. The application also reveals no supervisory experience. However, Plaintiff's resume indicates that he was a "Fork Lift Operator/Supervisor" from September 1984 to October 1988 while employed by Spiegel's. Plaintiff was promoted to Highway Maintenance Worker 2 in July 2004. Plaintiff received several oral and written warnings between 1998 and 2002 when Wayne Yocum ("Yocum") was his Supervisor.[5]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 20, 2005, which alleged that he had been subjected to continuing discrimination based upon race and had been retaliated against for having previously filed an EEOC charge. The previous charge was filed on January 19, 2004.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party

---

[5]The exact extent of Plaintiff's discipline is not clear from the record. Defendant cites collective exhibit 3 to Plaintiff's deposition for the proposition that "Plaintiff has had a significant history of disciplinary actions taken against him." (Docket Entry No. 19 at 10). Collective exhibit 3 consists of six disciplinary forms dated between 1998 and 2002. All were signed by then-Supervisor Yocum and it would appear, at least from that exhibit, Plaintiff received no disciplinary actions after 2002.

5

does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

Plaintiff alleges that he was subjected to discrimination and retaliation when he was not selected for the position of Highway Maintenance County Supervisor. He also claims he was subjected to disparate treatment in the application process.

### A. Alleged Discrimination in Relation to Promotion to County Supervisor

Because of the manner in which it has been presented, the summary judgment record may raise more questions than it answers in regard to Plaintiff's assertion that he was discriminated against when he was not promoted to Highway Maintenance County Supervisor. The record lacks affidavits and deposition testimony from most of the key players, including the members of the interview committee, the successful applicant Staggs, and Plaintiff's and Staggs' supervisor during the relevant period, Yocum. What is in the record presents several significant questions of fact which preclude summary judgment for either party.

Where, as in this case, there is no direct evidence of animus, an employee asserting race discrimination is required to present a *prima facie* case based upon circumstantial evidence. To establish a *prima facie* case of racial discrimination based on a failure to promote utilizing circumstantial evidence, "a plaintiff generally must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of

6

the protected class received promotions." Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-1021 (6th Cir. 2000).

If plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision, with the plaintiff then bearing the burden of showing that the defendant's proffered reason is pretextual. Id. at 1021. Plaintiff can demonstrate pretext by showing that the proffered reason (1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. Id.

With regard to the *prima facie* case, there is no dispute that Plaintiff has established the first and third element. He is an African American and hence a member of a protected class, and he applied for, but was not given, the position.

However, Defendant challenges Plaintiff's *prima facie* case by claiming that, with regard to earlier applications, Plaintiff was not qualified for the promotion because he did not score high enough to land on the Certificate of Eligibles and/or was not in the top five on the Certificate of Eligibles. While that may be true, it is also true that Plaintiff scored over seventy and was among the top five candidates on the Certificate of Eligibles when it was pulled in April, 2005. Hence, he was qualified by the state's own requirements for the position that Staggs assumed, notwithstanding the fact that others may have scored higher. See, Cicero v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2005) (a court is not to look at others' qualifications in determining whether a plaintiff is qualified for a position).

Defendant also claims that Plaintiff cannot establish his *prima facie* case because he cannot show that he had qualifications which were similar to Staggs' qualifications. This necessarily gets into Defendant's proffered reasons for its decision and it is entirely appropriate for the Court to look at the proffered reasons in conjunction with whether Plaintiff has established his *prima facie* case. White v. Columbus Housing Auth., 429 F.3d 232, 242-43 (6th Cir. 2005) (collecting cases); see also,

7

Wu v. Tyson Foods, Inc., 189 Fed. Appx. 375, 381 (6th Cir. 2006) (noting that analysis regarding pretext sometimes necessarily overlaps with the fourth prong of the *prima facie* case").

Based upon the letter from Regional Manager Gaffron to TDOT's Director of Affirmative Action, Defendant claims that Plaintiff was not similarly situated to Staggs in that Staggs had more education than Plaintiff, Staggs had supervisory experience while Plaintiff did not, and Staggs had a good work record while Plaintiff did not. Defendant utilizes these same contentions as its legitimate non-discriminatory reasons for not promoting Plaintiff. Plaintiff has presented evidence which calls into question the truthfulness of these reasons.

With regard to the respective educational backgrounds, it appears that on the face of their respective applications Plaintiff and Staggs were dissimilar. After all, the applications show Plaintiff had one month of post-secondary education, whereas Staggs had three years of post-secondary education. However, when the evidence is construed in Plaintiff's favor, an inference which may be drawn from the evidence is simply that Staggs lied. Staggs wrote on his application that he had "Postsecondary education *after*" high school in the field of "Technology" and "Ag Science" from 1991 to 1995 at Lawrenceburg Vocational. However, that same application reveals that Staggs did not even graduate high school until June 1995, which would mean that he received his post-secondary education while he was still in secondary school. While Defendant suggests the interviewing committee was unaware of this discrepancy or the possibility that Staggs had misrepresented his education, the Court has absolutely no way to make that determination, having not heard from anyone on the committee or Staggs himself.

Plaintiff also calls into question Defendant's assertion that Staggs had supervisory experience while Plaintiff did not. Plaintiff notes that, he too, has supervisory experience – he was a Fork Lift Supervisor at Spiegel's for more than three years. That experience is not reflected on Plaintiff's application, but it is reflected on Plaintiff's resume which he claims was submitted with his application. While Defendant asserts that there is no evidence that the interview committee actually saw or considered Plaintiff's resume, the opposite is also possible. Again, the Court does

8

not know precisely what was before the interview committee or whether the committee even made inquiry of the candidates about the nature and scope of any supervisory experience they may have had.

Further, Plaintiff testified in his deposition that Yocum, who was Staggs' and Plaintiff's supervisor, repeatedly selected Staggs to fill in for him when he was out, even though Plaintiff had been with TDOT longer than Staggs. There may be legitimate reasons for this, but the Court is not in a position to make that determination. A common thread in Plaintiff's deposition testimony is that Yocum favored Caucasian employees over the African American employees.

As for the work records, Plaintiff does not dispute that he had write-ups under Yocum, nor does he dispute that Staggs' record contained no write-ups. However, harkening back to the alleged favoritism of Yocum, Plaintiff testified in his deposition that he observed Staggs reporting to work late at least twice a week, yet Staggs was never disciplined for his tardiness. Conversely, Plaintiff would be written-up by Yocum for any perceived malfeasance and the record suggests that Plaintiff did not receive write-ups after Yocum was no longer his supervisor.

Obviously, the Court is not in a position to judge the veracity of Plaintiff's assertions. That will be for the jury to decide. It suffices that the record, given its sparseness, presents genuine issues of material fact as to whether Staggs was promoted for legitimate non-discriminatory reasons, or whether the promotion was given to Staggs for a discriminatory reason. As such, summary judgment will not be granted to either party on this claim.

## B. Alleged Retaliation in Relation to Promotion to County Supervisor

The analytic framework used in analyzing retaliation claims is similar to the standard previously discussed in relation to Plaintiff's race discrimination claim. Absent direct evidence, Plaintiff must present a *prima facie* case by showing: (1) he engaged in protected activity; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against him, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse

9

employment action.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000)(emphasis omitted).  If he does so, Defendant may then set forth its legitimate non-retaliatory reasons for the action which the Plaintiff may rebut by showing that the reasons are pretextual.  Id.

In Paragraph 8 of his Complaint, Plaintiff stated that he had filed a prior EEOC charge concerning racial discrimination.  In Interrogatories sent to Plaintiff, Defendant asked Plaintiff to "identify and describe with particularity (including date of filing), the specific EEOC charge that you alleged you filed," to which Plaintiff responded "Cobbins v. TDOT, No. 253-2004-00160 (January 19, 2004)."  (Docket Entry No. 29 at 2).  Focusing on this interrogatory response, Defendant extensively questioned Plaintiff during his deposition about the January 2004 EEOC charge and why Plaintiff thought he had been retaliated against by not being promoted because he had filed the charge.  Plaintiff merely suggested that because he filed the charge and because he subsequently was not promoted there must be some connection. Defendant now moves for summary judgment arguing that there is no temporal proximity between the January 2004 charge and the challenged act and, without any more evidence, Plaintiff cannot establish a causal connection..

The January 2004 charge was filed at least fifteen months before the challenged action. Plaintiff offers no evidence other than the fact that he filed the charge to support his claim that he was subjected to retaliation by not receiving the promotion for having filed that charge.  This is simply not enough to raise a jury question.  See, Hussain v. Highgate Hotels, Inc., 126 Fed. Appx. 256, 263 (6th Cir. 2005) (causation not established merely because plaintiff engaged in protected activity seven months before termination); Parnell v. West, 1997 WL 27151 at *3 (6th Cir. 1997) ("cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months").  Plaintiff has not established a *prima facie* case with respect to retaliation based upon his filing a charge in January 2004.

The Court notes that in his Complaint Plaintiff alleges he "[f]iled an EEOC charge in or about April 2005" (Complaint ¶ 11) and attached to the Complaint a copy of an EEOC charge dated April 20, 2005. In the charge, Plaintiff claims he was subjected to race discrimination and retaliation

10

in not having been previously promoted. For unknown reasons, the parties do not focus on this charge as opposed to the January 2004 charge. The Court will not ignore evidence which is clear in the record for the mere expediency of disposing of Defendant's motion.

The April 20, 2005 charge would have been filed in the midst of the process for the selection of County Supervisor in the spring of 2005. Within five days of filing the charge, Plaintiff was interviewed. A little over two weeks later, Regional Director Gaffron sent his letter to the Director of Affirmative Action recommending that Staggs be promoted. Unlike the January 2004 charge which was filed over fifteen months before the challenged action, the April 20, 2005 charge may be sufficient to establish a causal link between the filing of the charge and Plaintiff not receiving the promotion. See, Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001)(the causation element of the *prima facie* case in a retaliation case may be established where the temporal proximity between the protected activity and the challenged act is "very close"); Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)("the close temporal proximity between the complaint and the termination – just 24 days – is sufficient to allow an inference that a causal connection existed"); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) (stating that "this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise"); Fasold v. Justice, 409 F.3d 178, 190 (3rd Cir. 2005) ("when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn"); Nguyen v. City of Cleveland, 229 F.3d 559, 567 (6th Cir.2000) (noting that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference" of a causal nexus).

Nevertheless, the Court must conclude that based on the record which has been developed, Defendant is entitled to summary judgment insofar as Plaintiff complains that he was subjected to

11

retaliation for having filed his EEOC charge on April 20, 2005. As indicated, to establish a *prima facie* case, Plaintiff must show that Defendant was aware of the charge. Morris, 201 F.3d at 791. After all, to retaliate one must have knowledge of the protected activity in order to be motivated by the protected activity. Revere v. Bloomingdale's, Inc., 2006 WL 3314633 at *9 (E.D.N.Y. 2006); Ramige v. McNeill Nutritionals, Inc., 2006 WL 2798774 at *15 (S.D. Ala. 2006)(both collecting cases). Here, while the April 20, 2005 charge was filed in the midst of the selection process, Plaintiff has presented no evidence as to when TDOT became aware of the charge, let alone that any of the members who sat on the interview committee and made the recommendation that Staggs be promoted were aware of Plaintiff's April 20, 2005 charge. Accordingly, Plaintiff has not established a *prima facie* case and Defendant is entitled to summary judgment on the claim for retaliation based on the April 20, 2005 charge.

## C. **Alleged Disparate Treatment in Relation to Application Process**[6]

"'Disparate treatment' . . . is the most easily understood type of discrimination." Int'l Brhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). "The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." Id.

In his Complaint, Plaintiff makes a passing reference to the fact that he may have been subjected to "disparate treatment concerning the application process." (Complaint ¶ 1). The only factual allegations made in support of that contention is that he "was denied these positions on one or more occasions without an interview whereas white applicants were interviewed." (Id. ¶ 9).

Although not required to do so, the Court has scoured the record in an effort to determine whether there are disputed facts in relation to the interview process and Plaintiff's alleged disparate treatment related thereto. The undisputed facts are that applications are received and screened by TDHR and that agency assigns applicants a score, not Defendant TDOT. The facts also show that

---

[6]Whether Plaintiff intends this to be a self-standing claim is unclear. Both his Motion for Summary Judgment and his Memorandum in support thereof (Docket Entry Nos. 22 & 23) focus on his denial of promotion to County Highway Maintenance Supervisor.

12

a minimum score for eligibility for a position is 70. When a position is to be filled, the TDHR, not Defendant TDOT develops a Certificate of Eligibles. Of those on the list, only the top three (in promotion cases) or the top five (in appointment cases) are provided interviews.

The record is bereft of evidence that TDHR somehow skewed the results in relation to Plaintiff. The record also lacks evidence that those placed on the Certificate of Eligibles did not belong there. The record also contains no evidence that Plaintiff was in the top three or top five for a position, but was not offered an interview while others who were not in the top three or top five were offered interviews.

By definition, a disparate treatment claim requires proof of differing treatment. More than that, it requires some evidence that this difference in treatment was because of the individual's race, color, religion, sex, or national origin. See, Communities for Equity v. Michigan High School Athletic Assoc., 459 F.3d 476 (6th Cir. 2006). Because Plaintiff fails to show any link between his race and his treatment in regard to the application process, Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment (Docket Entry No. 17) will be granted in part and denied in part. It will be granted with respect to Plaintiff's claim that he was subjected to retaliation when he was not selected for the position of Highway Maintenance County Supervisor and with respect to Plaintiff's claim that he was subjected to disparate treatment in the application process for that position. The Motion will be denied with respect to Plaintiff's claim that he was subjected to race discrimination in not being promoted to the position of Highway Maintenance County Supervisor. Plaintiff's Motion for Summary Judgment (Docket Entry No. 22) will be denied.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE